UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE
COMPANY, ALLSTATE FIRE AND
CASUALTY INSURANCE
COMPANY, ALLSTATE PROPERTY
AND CASUALTY INSURANCE
COMPANY, ESURANCE
INSURANCE COMPANY, and
ESURANCE PROPERTY AND
CASUALTY INSURANCE
COMPANY,

    Plaintiffs,

v.

TOX TESTING, INC., PARAGON
LABS, LLC, MICHIGAN
TECHNOLOGY PARTNERS, LLC,
CURE IMAGING, LLC, US HEALTH
PHARMACEUTICALS, LLC d/b/a
MEDS DIRECT, BLOCK BILLING
SOLUTIONS, LLC, MICHAEL
ANGELO, and CHITRA SINHA, M.D.,

    Defendants.
_____/

Case No. 18-13336

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

**<u>OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT AGAINST MERCYLAND HEALTH SERVICES, PLLC AND MOHAMMED ALI ABRAHAM, M.D., a/k/a MOHAMMED ALI IBRAHIM (ECF NO. 96) AS UNOPPOSED, (2) ENTERING THE AGREED JUDGMENT, (3) PERMITTING PLAINTIFFS TO SUBMIT A BILL OF COSTS DETAILING THEIR ATTORNEY'S FEES AND COSTS INCURRED AS A RESULT OF THE BREACH OF THE SETTLEMENT AGREEMENT, AND (4) CANCELING THE HEARING SCHEDULED FOR OCTOBER 23, 2019 AT 10:00 A.M.</u>**

In this action, the Allstate plaintiffs allege that the defendants, comprised of "a medical clinic, urine drug testing companies, magnetic resonance imaging ("MRI") facilities, pharmacies, physical therapy clinics, and the physicians, owners, managers, agents and representatives of the same," engaged in a fraudulent scheme to seek reimbursement under Michigan's No-Fault Act for treatment and services that were not actually rendered, were medically unnecessary, were fraudulently billed, and were not lawfully rendered. Allstate entered into a confidential settlement agreement with two of the defendants, but now claims that those defendants materially breached the settlement agreement and accordingly seeks entry of the "Agreed Judgment" as provided by the parties as a term of the settlement.

Presently before the Court is Plaintiffs' Motion for Entry of Judgment Against Mercyland Health Services, PLLC ("Mercyland") and Mohammed Ali Abraham, M.D., a/k/a Mohammed Ali Ibrahim ("Abraham"). (ECF No. 96.) Defendants Mercyland and Abraham have not responded to Allstate's motion. The Court has determined, pursuant to E.D. Mich. L.R. 7.1(f), that a hearing is not necessary and decides the matter on the written submission.

## I. BACKGROUND

### A. Allstate's Complaint

On October 25, 2018, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collective "Allstate" and/or "Plaintiffs") filed their Complaint against 18 defendants, including Mercyland Health Services, PLLC ("Mercyland") and Mohammed Ali Abraham, M.D., a/k/a Mohammed Ali Ibrahim ("Abraham"). (ECF No. 1, Complaint.) Allstate alleges the existence of a well-organized and complex fraudulent scheme whereby the defendant medical providers submitted false and fraudulent medical records, bills, and invoices to Allstate seeking reimbursement under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, for medical treatment and services that were not actually provided, were medically unnecessary, were not lawfully rendered, and were charged at unreasonable rates. (*Id.*) Allstate asserts claims for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) and (d), common law fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and declaratory relief. (*Id.*)

### B. April 1, 2019 Settlement Agreement Between Allstate, Mercyland and Abraham

On April 1, 2019, Plaintiffs Allstate and Defendants Mercyland and Abraham entered into a Confidential Settlement Agreement to resolve Allstate's allegations in the Complaint against Mercyland and Abraham only. (ECF No. 96-4, Confidential Settlement Agreement.) The Settlement Agreement required Mercyland and Abraham, jointly and severally, to pay the amount set forth in the Agreement to Allstate within 75 days of the Settlement Agreement's execution date, April 1, 2019. (*Id.* ¶ 2.) Thus, payment was due to Allstate on or before June 15, 2019. To "assure that Mercyland and Abraham will comply with their obligations under this [Settlement] Agreement," Mercyland and Abraham were required to (and purportedly did) sign an agreed-upon form of judgment (the "Agreed Judgment") as a term of the Settlement Agreement, in the amount of $250,000.00, less any payments made by Mercyland and Abraham pursuant to paragraph 2 of the Agreement. (*Id.* ¶ 3 and Exhibit A; ECF No. 96-3, Agreed Judgment.) The Settlement Agreement provides that, "in the event that Allstate does not receive timely payment pursuant to paragraph two," Allstate is entitled to enter the Agreed Judgment after providing Mercyland and Abraham with ten (10) days written notice of the breach. (ECF No. 96-4, Settlement Agreement ¶ 3.)

In the May 22, 2019 Stipulation and Order dismissing Allstate's claims against Mercyland and Abraham, without prejudice, the Court expressly "retain[ed]

jurisdiction over this matter only to enforce the terms of settlement reached between the parties." (ECF No. 67, May 22, 2019 Stipulation & Order of Dismissal 5, PgID 2626.)

### C. Mercyland and Abraham Breached the Parties' Settlement Agreement

Pursuant to the terms of the parties' Settlement Agreement, Mercyland and Abraham were required to make payment of the settlement amount to Allstate, in full, by June 15, 2019. (*See* Settlement Agreement ¶ 2.) However, Allstate did not receive payment, and, on June 18, 2019, Allstate provided written notice to Mercyland and Abraham of their "material breach of the Settlement Agreement" because of their failure to make payment "within the time specified by the Settlement Agreement," or thereafter. (ECF No. 96-5, June 18, 2019 Written Notice from Allstate, PgID 3350.) Allstate advised in that notice that if the material breach was not cured within ten days (by June 28, 2019), it would "enter the Agreed Judgment and seek all damages available to it." (*Id.*) Mercyland and Abraham failed to cure the breach and have not made any payment to Allstate due pursuant to the parties' Settlement Agreement. (ECF No. 96-6, Catia Monforton-Farris Aff., ¶ 6, PgID 3352.)

### D. Allstate's Motion for Entry of Judgment Against Mercyland and Abraham

On July 22, 2019, Allstate filed a Motion for Entry of Judgment Against Mercyland and Abraham. (ECF No. 96, Pls.' Mot. Entry of J.) Allstate asserts that Mercyland and Abraham remain in breach of the Settlement Agreement and have not made any payment to Allstate. (Pls.' Mot. Entry J. 2-3, PgID 3323-24; Monforton-Farris Aff., ¶ 6, PgID 3352.) Allstate therefore requests that the Court enter final judgment in its favor and against Mercyland and Abraham under Fed. R. Civ. P. 54 in the form of the Agreed Judgment in the amount of $250,000.00. (Pls.' Mot. Entry J. 5, PgID 3326; ECF No. 96-3, Agreed Judgment.) Mercyland and Abraham have failed to file a response to Allstate's motion, and it is therefore unopposed. *See* E.D. Mich. L.R. 7.1(c)(1) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available.").

### E. The October 9, 2019 Order Granting Plaintiffs' Motion for Expedited Hearing

Allstate's Motion for Entry of Judgment was initially set for hearing on December 12, 2019. (ECF No. 117.) However, on October 4, 2019, Allstate filed a Motion for Expedited Hearing on Allstate's Motion for Entry of Judgment, seeking to expedite that hearing "to the soonest time allowed by the Court's schedule." (ECF No. 123.) In that motion, Allstate raised "serious concerns" that Mercyland is using the time since the filing of Allstate's July 22, 2019 Motion for Entry of Judgment to

"dissipate and conceal its assets in an effort to prevent Allstate from executing on the Agreed Judgment." (ECF No. 123-1, Pls.' Brief 2, PgID 4561.) Allstate attached financial records from one of Mercyland's banks showing that Mercyland began making daily wire transfers of approximately $2000 in late 2018 to Argus Capital Funding, LLC and Green Capital Funding, LLC, as well as several large wire transfers to unknown accounts, with the bank account being reduced from over $700,000 to approximately $5,000 over a period of three months. (*Id.*; ECF No. 123-3, Mercyland Bank Statements.) In addition, Mercyland's and Abraham's counsel, Robert Akouri, Akouri and Associates, PLLC, filed a motion seeking to withdraw from representing Mercyland in separate litigation, and Allstate surmised that the reason for the motion is that Mercyland refuses to honor payment of its attorney's fees. (Pls.' Brief 2-3, PgID 4561-62; ECF No. 123-4, Mot. Withdraw in Case No. 19-10669.)

The Court granted Allstate's motion on October 9, 2019 and re-scheduled the hearing for October 23, 2019. (ECF No. 124.) However, the Court has now determined, pursuant to E.D. Mich. L.R. 7.1(f), that a hearing is not necessary on this unopposed motion and therefore decides the matter on the written submission.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not provide for "motions for entry of judgment." However, the Sixth Circuit "has long recognized the broad, inherent

7

authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (quoting *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282-83 (6th Cir. 1986)). "A district court may summarily enforce a settlement agreement if: (1) it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement, *Limbright v. Hofmeister*, 566 F.3d 672, 674-75 (6th Cir. 2009); (2) it determines 'that agreement has been reached on all material terms[,]' *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); and (3) the 'agreement is clear and unambiguous and no issue of fact is present.' *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001)." *Stenger v. Freeman*, 683 F. App'x 349, 350 (6th Cir. 2017) (Clay, J., concurring). "If the parties dispute the settlement agreement's terms or validity, the Court ordinarily must conduct an evidentiary hearing." *L.A. Ins. Agency Franchising, LLC v. Kutob*, No. 2:18-cv-12310, 2019 WL 3229135, at *2 (E.D. Mich. July 18, 2019) (Murphy, J.) (citing *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621-22 (6th Cir. 1973) (citation omitted)). "If, however, an agreement is clear and unambiguous, or no issues of fact are present, no evidentiary hearing is required." *Id.* (citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976)). "Thus, 'summary enforcement of a settlement agreement has been deemed appropriate [when] no substantial dispute exists regarding the entry into and terms

of an agreement." *Id.* (citing *RE/MAX Int'l*, 271 F.3d at 646). "Regardless of whether an evidentiary hearing is held, the 'court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.'" *Stenger*, 683 F. App'x at 350 (quoting *Brock*, 841 F.2d at 154).

## III. ANALYSIS

### A. Jurisdiction

As an initial matter, the Court must determine whether it has jurisdiction to enforce the terms of the Settlement Agreement. *Stenger*, 683 F. App'x at 350. "Federal courts generally do not retain jurisdiction to enforce settlement agreements because those disputes implicate state law and have little to do with the original controversy that invoked federal subject-matter jurisdiction." *GATX Corp. v. Appalachian Fuels, LLC*, No. 09-41-DLB, 2011 WL 4015573, at *1 (E.D. Ky. Sept. 9, 2011) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377-81 (1994)). As the Sixth Circuit explained in *RE/MAX Int'l*, "as courts of limited jurisdiction, federal district courts do not possess the inherent power to vindicate their own authority where parties enter into a voluntary agreement resolving their federal lawsuit." *RE/MAX Int'l*, 271 F.3d at 641 (citing *Kokkonen*, 511 U.S. at 375). Instead, "[e]nforcement of the settlement agreement, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."

9

*Kokkonen*, 511 U.S. at 375. However, a federal court may retain jurisdiction over the settlement by: (1) expressly including a provision retaining jurisdiction in the order of dismissal; or (2) incorporating the settlement agreement's terms in the order. *Hehl v. City of Avon Lake*, 90 F. App'x 797, 801 (6th Cir. 2004); *RE/MAX Int'l*, 271 F.3d at 641-42; *Kokkonen*, 511 U.S. at 381.

Here, the Stipulation and Order of Dismissal as to Defendants Mercyland and Abraham expressly states that the "Court shall retain jurisdiction over this matter only to enforce the terms of settlement reached between the parties." (ECF No. 67, Stipulation & Order of Dismissal 5, PgID 2626.) Accordingly, the Court finds that it has jurisdiction to enforce the Settlement Agreement. *See RE/MAX Int'l*, 271 F.3d at 641-42; *Kokkonen*, 511 U.S. at 381.

### B. Power to Enforce the Settlement Agreement

Second, a federal district court may enforce a settlement if the parties reached an agreement on all material terms. *See RE/MAX Int'l*, 271 F.3d at 646. A settlement agreement is a type of contract, and, therefore, questions about its formation and enforceability are governed by state contract law. *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 401 n.2 (6th Cir. 2014). The Settlement Agreement at issue here expressly provides that it is governed by Michigan law. (Settlement Agreement ¶ 11, PgID 3339.) Under Michigan law, the Court "must enforce the terms of the settlement agreement as written, 'interpreting the

unambiguous language in its plain and easily understood sense.'" *Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc.*, 355 F.3d 927, 930 (6th Cir. 2004) (quoting *Gelman Sciences, Inc. v. Fidelity & Cas. Co. of New York*, 456 Mich. 305 (1998), *overruled on other grounds by Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41 (2003)). The test for ambiguity under Michigan law is whether a term "is equally susceptible to more than a single meaning." *RBS Citizens Bank, N.A. v. Purther*, 22 F.Supp.3d 747, 752 (E.D. Mich. 2014) (quoting *Choates v. Bastian Bros., Inc.*, 276 Mich. App. 498 (2007)). "If the contract terms are not ambiguous, then contradictory inferences that may be drawn are subjective and irrelevant." *Pierson Sand & Gravel, Inc. v. Pierson Twp.*, 851 F.Supp. 850, 858 (W.D. Mich. 1994) (citation omitted).

In this case, the parties have reached an agreement on all material terms, as evidenced by the Settlement Agreement executed by all parties, and the terms of the Settlement Agreement are not ambiguous. (*See* ECF No. 96-4, Settlement Agreement.) The Settlement Agreement expressly provides that "Mercyland and Abraham, jointly and severally, shall pay to Allstate" the designated settlement amount "within 75 days of the Execution Date." (*Id.* ¶ 2.) The Agreement further states that, "[a]s further assurance that Mercyland and Abraham will comply with their obligations under this Agreement, Mercyland and Abraham shall execute and deliver to Allstate the Judgment in the form attached as Exhibit A hereto (the

11

"Judgment") concurrent with their execution of this Agreement," and that "the Judgment shall be calculated at $250,000.00 less all payments made by Mercyland and Abraham to Allstate pursuant to paragraph two (2)." (*Id.* ¶ 3.) The Settlement Agreement further plainly provides that if Allstate does not receive timely payment pursuant to paragraph 2 of the Settlement Agreement, Allstate must give Mercyland and Abraham written notice of the breach of the payment term of the Agreement, and Mercyland and Abraham shall then have seven days to cure the breach "by immediately tendering payment to Allstate." (*Id.*) If payment is not received on or before the tenth day after written notice is provided, "Allstate may enter the Judgment[.]" (*Id.*) The terms of this Settlement Agreement are clear and unambiguous.

And, Allstate has submitted undisputed evidence that it is entitled to entry of the Agreed Judgment. Allstate demonstrated that Mercyland and Abraham failed to make the payment required by paragraph 2 of the Settlement Agreement, and that they have thus materially breached the Settlement Agreement. (ECF No. 96-6, Monforton-Farris Aff. ¶ 6, PgID 3352 ("As of July 22, 2019, Allstate has not received any payment of the amount due and owing pursuant to the Confidential Settlement Agreement.").) Allstate properly provided written notice to Mercyland and Abraham of this breach. (ECF No. 96-5, June 18, 2019 Written Notice from Allstate, PgID 3350 ("If Allstate does not receive payment by June 28, 2019, if will

12

enter the Agreed Judgment and seek all damages available to it.").) Mercyland and Abraham failed to cure the material breach of the Settlement Agreement, and thus Allstate is entitled to enter the Agreed Judgment in the amount of $250,000.00. (Settlement Agreement, ¶ 3.)

In addition, in the Settlement Agreement, Mercyland and Abraham expressly waived any potential defenses to the entry and amount of the Agreed Judgment. (Settlement Agreement, ¶ 3.) Specifically, Mercyland and Abraham "expressly agree that the amount of the Judgment is reasonable, not excessive, and fairly correlates to the amount of damages Allstate sustained," "expressly acknowledge that they cannot challenge the amount or validity of the Judgment in the event that the Judgment is entered," (except to the extent the Judgment does not reflect a credit for payments made or if Mercyland and Abraham timely cured the breach – neither exception of which applies here), and "waive any and all defense(s) they may have to the enforceability" of the Judgement. (*Id.*)

Finally, the Agreed Judgment provides that it "constitutes a final judgment pursuant to Fed. R. Civ. P. 54." (Agreed Judgment, ¶ 4.) Rule 54(b) provides:

> When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or

13

parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Entry of a final judgment under Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Lowery v. Federal Exp. Corp.*, 426 F.3d 817, 820 (6th Cir. 2005) (quoting *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986)). Not all final judgments on an individual claim should be immediately appealable, even if they may be able to be separated from the unresolved claims. *Id.* (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). Rather, the Court must "expressly determine[] that there is no just reason for delay" in entering a final judgment as to the dismissed defendants. Fed. R. Civ. P. 54(b).

When determining if there is no just reason for delay, the Court is tasked with considering the following, non-exhaustive list of factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir. 1994) (internal citations omitted). Analysis of these factors here demonstrate that there is no just reason for delay. The Settlement Agreement and Agreed Judgment settles and adjudicates all of Plaintiffs' claims against Mercyland and Abraham only, and the judgment will not be affected by future developments in the underlying litigation, which involves separate claims and defenses between Plaintiffs and the remaining defendants. The need for review of this Agreed Judgment would not be mooted by any future developments in the case and the Court of Appeals would not be obliged to consider the same issues regarding the parties' Settlement Agreement and Agreed Judgment a second time, as those issues are unique to Plaintiffs, Mercyland and Abraham. And, there does not appear to be any claim or counterclaim which could result in a set-off against the Agreed Judgment. Therefore, upon consideration of all these factors and in the interests of judicial administration and having found there is no just reason for delay, the Court finds that Allstate is entitled to entry of the Agreed Judgment against defendants Mercyland and Abraham, in the amount of $250,000.00.

**C.    Allstate's Request for Attorney's Fees and Costs Incurred as a Result of the Material Breach**

Finally, Allstate correctly points out that the Settlement Agreement provides, in paragraph 6 of the Agreement, that "the breaching Party shall be responsible for all reasonable damages, including attorney's fees, incurred as a result of said

breach." (Settlement Agreement, ¶ 6.) As discussed above, Allstate has presented undisputed evidence that Mercyland and Abraham have materially breached the parties' Settlement Agreement. Mercyland and Abraham have not filed a response to Allstate's motion or otherwise disputed that they have "material[ly] breach[ed]" the Settlement Agreement, and thus this request for attorney's fees and costs is unopposed. Allstate thus also seeks "entry of judgment directing Mercyland and Abraham to pay all costs and attorney's fees incurred in bringing the within motion, and any costs, interest, and attorney's fees that may be incurred in the future in Allstate's attempt to collect the amount owed to it by Mercyland and Abraham." (Pls.' Mot. 4, PgID 3325.) However, Allstate does not otherwise specify or provide any support regarding the amount of the "costs and attorney's fees" it seeks.

The Stipulation and Order of Dismissal expressly provides that the Court retains jurisdiction "to enforce the terms of settlement reached between the parties." (May 22, 2019 Stipulation & Order, PgID 2626.) Allstate's request for attorney's fees and costs pursuant to paragraph 6 of the parties' Settlement Agreement is GRANTED. Allstate may submit a supported bill of costs by **November 5, 2019** for the reasonable costs and attorney's fees incurred as a result of the breach of the parties' Settlement Agreement, as provided in paragraph 6 of that Settlement Agreement. Defendants Mercyland and Abraham may submit objections, if any, to Allstate's bill of costs by **November 12, 2019**.

16

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Entry of Judgment Against Mercyland and Abraham (ECF No. 96) is GRANTED and the Agreed Judgment shall be ENTERED.

Plaintiffs may submit a bill of costs detailing their reasonable attorney's fees and costs incurred, pursuant to paragraph 6 of the parties' Confidential Settlement Agreement, by **November 5, 2019**. Defendants Mercyland and Abraham may submit objection, if any, to Allstate's bill of costs by **November 12, 2019**.

Finally, the hearing scheduled for Wednesday, October 23, 2019 at 10:00 a.m. is CANCELED.

IT IS SO ORDERED.

Dated: October 22, 2019            s/Paul D. Borman
Paul D. Borman
United States District Judge